UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X

                           :

**MICHAEL ERBER**,

                           :

               Petitioner,

                           :   **MEMORANDUM DECISION AND ORDER**

       – against –                :

                           .   22-CV-7233 (AMD)

**SUPERINTENDENT J. RICH**,    :

                            :

             Respondent.

                            :

------------------------------------------------------------------ X

**ANN M. DONNELLY**, United States District Judge:

In 2020, the petitioner was convicted after a jury trial in New York State Supreme Court of second-degree grand larceny, first-degree scheme to defraud, and four counts of third-degree grand larceny. The petitioner's conviction arose out of his scheme to steal money from homeless veterans and nonprofit organizations that assisted veterans in securing permanent housing. The Appellate Division, Second Department affirmed the conviction on November 19, 2025. New York courts also denied the petitioner's two state habeas petitions.

In seeking habeas relief, the petitioner raises the same claim he made in his state habeas petitions: that the New York Office of the Attorney General ("OAG") did not have authority to prosecute him, because it did not give him the Veterans' Affairs referral letter while the case was pending in the trial court. As explained below, the petition is denied.

**BACKGROUND**

**I.    The Investigation and Indictment**

On March 16, 2017, Eric J. Hesse, the Director of the New York State Division of

Veterans' Affairs, asked the OAG, pursuant to New York Executive Law § 63(3), to investigate

allegations that the petitioner and another person committed  "larceny and fraud . . . upon

disenfranchised Veterans" through MAG-V, a 501(c)(3) not-for-profit organization of which the

petitioner was the founder and provisional CEO.  (ECF No. 27-1, State Record ("SR") 1–2; ECF

No. 12 at 3–4.)[1]  According to Hesse, the OAG's preliminary investigation had revealed that:

> MAG-V recruited homeless veterans with promises of housing and
> job training.  After selecting veterans in need of housing, MAG-V
> entered into lease agreements with property owners in Brooklyn
> and the Bronx, under which the veterans were the listed tenants. . .
> . MAG-V then secured rental payments (typically for a six-month
> period) from Community Based Organizations (CBOs) in New
> York City.  After six months, MAG-V began collecting rents
> directly from the veterans.  Unbeknownst to the CBO's or the
> Veterans, MAG-V did not provide any of the collected rental
> payments to the respective property owners.  As a result, the
> property owners initiated eviction proceedings against the
> Veterans.

(SR 1.)  Hesse asked the OAG, to "investigate and, if appropriate, prosecute" the petitioner and

others for "Grand Larceny, Scheme to Defraud, and any other offense arising out of such

investigation."  (SR 1.)

---

[1] Executive Law § 63(3) provides: "The attorney-general shall . . . [u]pon request of the governor,
comptroller, secretary of state, commissioner of transportation, superintendent of financial services,
commissioner of taxation and finance, commissioner of motor vehicles, or the state inspector general, or
the head of any other department, authority, division or agency of the state, investigate the alleged
commission of any indictable offense or offenses in violation of the law which the officer making the
request is especially required to execute or in relation to any matters connected with such department,
and to prosecute the person or persons believed to have committed the same and any crime or offense
arising out of such investigation or prosecution or both, including but not limited to appearing before
and presenting all such matters to a grand jury."

2

The OAG investigated the petitioner and MAG-V, and in 2018, a Kings County Grand Jury charged the petitioner with second degree grand larceny, in violation of New York Penal Law ("PL") § 155.40(1) (Count 1), five counts of third-degree grand larceny, in violation of PL § 155.35(1) (Counts 2–6), and scheme to defraud in the first-degree, in violation of PL § 190.65(1)(b) (Count 7).  (SR 3–7.)

## II.   The Trial Court Proceedings[2]

The petitioner went to trial before Judge Donald Leo and a jury in Kings County Supreme Court in January 2020.  (ECF No. 27-2, Trial Transcript ("Tr.") 8.)  The prosecution called as witnesses a United States Department of Veterans Affairs grant-program administrator, representatives from the five nonprofit organizations named in the indictment, the landlords from whom the petitioner leased three buildings, three veterans, and an OAG forensic auditor.  The defense did not call any witnesses.

The evidence established the following facts.  The United States Department of Veterans Affairs ("VA") provides grants to help homeless veterans find and maintain permanent housing through the Supportive Services for Veteran Families ("SSVF") program.  (Tr. 332:24–33:20.)  The SSVF provides the grants to nonprofit organizations, which deliver the services to veterans.  (Tr. 333:15-20.)  For example, a nonprofit could use grant funds to pay security deposits, rental assistance, and broker fees for a veteran.  (Tr. 355:8-14.)  From 2014 to 2016, the SSVF program had approximately seven grantees in New York City, including Services for the Underserved (SUS), Jericho Project, Riseboro, Volunteers of America (VOA), and Help USA.  (Tr. 336:7–37:5.)  The SSVF grant agreements detailed certain requirements.  (Tr. 337:20–38:5.)  Although veterans signed their own leases, SSVF funds were not paid directly to veterans or their families.

---

[2] The petitioner says that he "is not attacking, challenging or contesting the criminal conviction o[r] sentence." (ECF No. 12 at 1.)  Thus, the Court summarizes the trial proceedings.

(Tr. 356:11-14.)  Instead, the funds went to the third-party vendor who helped the veteran get housing or provided the housing — a landlord, for example.  (Tr. 356:3-8.)  The VA monitors the grantees to ensure compliance with the requirements; it contacts the Inspector General for the Department of Veterans Affairs to investigate any allegations of impropriety.  (Tr. 337:25–38:2; 343:13–44:2.)

The petitioner and his company, MAG-V, signed master leases with the owners of three apartment buildings in New York City, which allowed him to sublease apartments in the buildings.  (Tr. 637:3–8.)  He then advised the five grantee nonprofits that he wanted to help homeless and low-income veterans move into rental units in the buildings.  (Tr. 357:4-10.)  The nonprofits paid MAG-V $97,700 for rent and security deposits on behalf of 27 veterans who rented apartments from the petitioner in one of the three buildings, with the understanding that all the money would be used to pay rent to the building owners.  (Tr. 870:12–17, 383:22–84:4.)  When the nonprofits' rental assistance ended, some veterans paid the rent themselves, totaling almost $23,000.  (Tr. 897:21–99:4.)[3]  However, the petitioner paid only $30,500 to the landlords.  (Tr. 870:21-23.)  He used the rest — almost $90,000 — for personal expenses.  (Tr. 870:21–71:5, 874:4–76:23.)

The jury convicted the petitioner of second-degree grand larceny, first-degree scheme to defraud, and four counts of third-degree grand larceny.  (Tr. 1073:12–74:5.)  On February 6, 2020, the court sentenced the petitioner as a predicate felon to 10½-to-21 years in prison.  (SR 8–9.)  The petitioner appealed his conviction to the Appellate Division, Second Department.  (SR 58.)

---

[3] The defendant also induced one victim, also a veteran, to invest $200,000 in MAG-V in exchange for a position on MAG-V's board of directors, a permanent job with MAG-V, and help buying a house. (Tr. 565:9-15.)  The victim did not receive these benefits.  (*Id.* 569:22–70:1.)

### III.    The State Habeas Corpus Proceedings

While his appeal was pending, the petitioner filed a *pro se* petition for a writ of habeas pursuant to New York Civil Practice Law and Rules (CPLR), Article 70, on August 18, 2021. (SR 10–16.)  He asserted that the OAG lacked jurisdiction to prosecute him because it did not have a referral letter as required by New York Executive Law § 63(3).  (SR 10–16.)  The OAG responded that he had to raise this claim either on direct appeal, or in a post-conviction motion pursuant to New York Criminal Procedure Law § 440.10, because he was challenging his criminal conviction.  (SR 17–18.)  The Appellate Division, Third Department summarily denied his petition on December 2, 2021, and denied his motion for re-argument on March 31, 2022. (SR 19–20.)  The New York Court of Appeals dismissed the petitioner's motion for leave to appeal the from the denial of the petition as untimely, and dismissed his application for leave to appeal from the denial of the re-argument motion as non-appealable.  (SR 23.)  On February 9, 2023, the Court of Appeals denied re-argument.  (SR 24.)

On January 24, 2022, the petitioner filed a second petition for a writ of habeas in which he repeated his claim that the OAG did not have jurisdiction to prosecute him under Executive Law § 63(3).  (SR 25–34.)  In its response, the OAG attached the 2017 referral letter from the Division of Veterans' Affairs, which established the OAG's authority to investigate and prosecute the petitioner.  (SR 41, 72–73.)  The OAG also argued that the petition should be denied on procedural grounds because the Appellate Division had already denied the petitioner's earlier petition in which he raised some of the same claims.  (SR 38.)  The OAG asserted that the petitioner could raise his claims only on appeal, not in a habeas petition.  (SR 39–40.)  The petitioner responded that the OAG did not disclose the letter before the trial, which was a violation of due process and equal protection.  (SR 78–80.)

On June 8, 2022, Acting Supreme Court Justice Richard W. Rich, Jr. dismissed the habeas petition.  (SR 83–84.)  The court held, among other things, that the petitioner should raise his claims on direct appeal or in a CPL § 440.10 motion, not in a habeas petition.  (*Id*.)  In addition, the court rejected as meritless the petitioner's claim that the OAG lacked the authority to prosecute him.  (SR 83 n.2.)  The petitioner filed a notice of appeal (SR 85), but did not timely perfect the appeal pursuant to the Practice Rules of the Appellate Division and Third Department Rules.  Accordingly, the Appellate Division deemed the appeal dismissed on December 21, 2022.  (SR 86–88.)

## IV.     The Direct Appeal

As noted above, the petitioner, represented by counsel, appealed his conviction to the Appellate Division, Second Department, but did not challenge the OAG's authority to prosecute him, as he does in this petition.  (SR 91–150.)  The Appellate Division affirmed his conviction on November 19, 2025.  *See People v. Erber*, 243 A.D.3d 804 (2nd Dep't 2025).

## V.     This Petition

On October 31, 2022, the petitioner filed a petition for a writ of Habeas Corpus in the United States District Court for the Western District of New York.  (ECF No. 1.)  The case was transferred to this court on November 29, 2022.  (ECF No. 5.)  On December 6, 2022, the Court ordered the petitioner to clarify in an amended petition whether he was proceeding under 28 U.S.C. § 2241 or 28 U.S.C. § 2254, and to identify the grounds on which he sought relief, the conviction he was challenging, and facts showing that he had exhausted his claims.  (ECF No. 7.)  The petitioner filed an amended petition on March 6, 2023.  (ECF No. 12.)  On April 27, 2023, the Court ordered the petitioner to show cause why the petition should not be dismissed as premature or as time-barred, and to include information about his state court appeal and any

6

other post-conviction motions.  (ECF No. 14.)  The petitioner responded on May 30, 2023.  (ECF

No. 16.)  The respondent filed its opposition on May 15, 2024, (ECF No. 26), and the petitioner

replied on June 7, 2024 (ECF No. 29).

## LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") limits federal

courts' authority to grant state prisoners' habeas corpus petitions.  A federal court can entertain

only those applications claiming violations "of the Constitution or laws or treaties of the United

States."  28 U.S.C. § 2254(a).

A petitioner can seek federal habeas corpus relief only after he exhausts his state court

remedies and gives the state court a fair and full opportunity to review the merits of the claim.

28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  In other words, a

petitioner must present "the essential factual and legal premises of his federal constitutional

claim to the highest state court capable of reviewing it."  *Jackson v. Conway*, 763 F.3d 115, 133

(2d Cir. 2014) (quoting *Rosa v. McCray*, 396 F.3d 210, 217 (2d Cir. 2005)).

Even when issues are properly before a federal court, AEDPA's standards are "difficult

to meet" because the Act provides a "highly deferential standard for evaluating state-court

rulings, which demands that state-court decisions be given the benefit of the doubt."  *Cullen v.

Pinholster*, 563 U.S. 170, 181 (2011) (citations omitted).  Accordingly, a federal court may not

"review a question of federal law decided by a state court if the decision of that court rests on a

state law ground that is independent of the federal question and adequate to support the

judgment."  *Coleman v. Thompson*, 501 U.S. 722, 729 (1991).  This bar applies to substantive

and procedural state law grounds alike.  *Id.* at 729–30.

As for claims that have been "adjudicated on the merits in State court proceedings," a federal court may not issue a writ of habeas corpus unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Cullen*, 563 U.S. at 181 (quoting 28 U.S.C. § 2254(d)).  Federal court review "is limited to the record that was before the state court that adjudicated the claim on the merits," and "[t]he petitioner carries the burden of proof." *Id.* at 180–81.

When a state court "(1) disposes of the claim on the merits, and (2) reduces its disposition to judgment . . . a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim — even if the state court does not explicitly refer to either the federal claim or to relevant federal case law." *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001) (citation omitted).  For example, a state court ruling simply that a claim is "without merit" constitutes an adjudication on the merits of that claim.  *Jimenez v. Walker*, 458 F.3d 130, 146 (2d Cir. 2006) (citing *Fama v. Comm'r of Corr. Services*, 235 F.3d 804, 810–11 (2d Cir. 2000)).  In such a case, "the federal court will focus its review on whether the state court's ultimate decision was an 'unreasonable application' of clearly established Supreme Court precedent." *Sellan*, 261 F.3d at 311–12.

For the purposes of federal habeas review, "clearly established Federal law" means "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).  A state court decision is "contrary to" or an "unreasonable application of" clearly established law if the decision: (1) is contrary to Supreme Court precedent on a question of law; (2) arrives at a conclusion different than that reached by the Supreme Court on "materially indistinguishable"

8

facts; or (3) identifies the correct governing legal rule but unreasonably applies it to the facts of the petitioner's case. *Id.* at 412–13. The court reviews the last reasoned state court decision. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). The state court's factual determinations are presumed to be correct, and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## DISCUSSION

The petitioner makes one argument in support of his petition: that the OAG did not have authority to prosecute him because it did not give him a copy of the New York Executive Law § 63(3) referral letter from Veterans' Affairs. (ECF No. 12.) The respondent argues that the Court should deny the petition because the petitioner did not exhaust his claim in state court. (ECF No. 26 at 14–15 n.5.) In addition, the respondent contends that the petition does not raise a cognizable federal habeas claim, and even if it did, it fails on the merits. (*Id.* at 14–18.)

## I.      Exhaustion

The respondent asserts that the petitioner did not exhaust his claim in state court. In particular, the respondent maintains that he could not raise the claim in state habeas proceedings, and even if he could, he did not exhaust his claim because he did not file a timely leave application to the New York Court of Appeals for the first petition, and did not perfect his appeal of the denial of the second petition. (*Id.* at 14–15 n.5 (citing SR 23, 88).)

"Before a federal court may grant habeas relief to a prisoner in state custody, the prisoner must exhaust his or her state court remedies." *Galdamez v. Keane*, 394 F.3d 68, 72 (2d Cir. 2005). "The exhaustion requirement has long been a staple of habeas jurisprudence." *Id.* "A claim is deemed exhausted if the petitioner: (1) 'fairly presented' to an appropriate state court the

same federal constitutional claim that he now urges upon the federal courts; and (2) presented his claim to the highest state court that could hear it." *Wright v. Lee*, No. 13-CV-5492, 2015 WL 4391575, at *7 (S.D.N.Y. July 15, 2015) (citation omitted). This "inquiry embodies the concept of procedural default;" "[a] petitioner may not evade exhaustion's strictures by defaulting his or her federal claims in state court." *Galdamez*, 394 F.3d at 73–74. "Thus, a petitioner cannot claim to have exhausted his or her remedies by dint of no longer possessing 'the right under the law of the State to raise, by any available procedure, the question presented,' if at some point the petitioner had that right but failed to exercise it." *Id.* at 74 (citations omitted). A "procedural bar to *habeas* review can only be overcome 'if the petitioner can first demonstrate either cause and actual prejudice, or that he is actually innocent.'" *Wright,* 2015 WL 4391575, at *9 (quoting *Gutierrez v. Smith*, 702 F.3d 103, 111 (2d Cir. 2012) (citation modified)).

The petitioner asserts that he "filed Habeas Corpus petitions in all three NY State Courts thereby exhausting state remedies." (ECF No. 12 at 7.) However, the plaintiff procedurally defaulted on both state habeas petitions: he did not timely appeal the denial of the first petition to the New York Court of Appeals (SR 23), and did not perfect the appeal of the denial of the second petition (SR 88). Thus, the highest state court did not have an opportunity to consider his claim on the merits. Nor has the petitioner shown cause for the procedural default and actual prejudice, or that he is actually innocent. *See Wright*, 2015 WL 4391575, at *9. Thus, he has not exhausted his claim. *See O'Sullivan*, 526 U.S. at 848 (finding that, although the petitioner raised his claims before the Appellate Court of Illinois, his "failure to present three of his federal habeas claims to the Illinois Supreme Court in a timely fashion has resulted in a procedural default of those claims"); *Wright*, 2015 WL 4391575, at *2 (federal habeas claim was

10

procedurally barred because "the Appellate Division found that [the petitioner's] appeal . . . was waived because his counsel did not follow New York's contemporaneous objection rule").

The petition is procedurally barred for a separate reason, because the petitioner did not raise this claim on direct appeal, where he was represented by counsel, even after Judge Rich advised him that his claim about the OAG's authority was more properly raised on direct appeal. (SR 84.) *See Rodriguez v. Lee*, No. 10-CV-3451, 2011 WL 1362116, at *6 (S.D.N.Y. Feb. 22, 2011) ("Failure to raise a claim on direct appeal has been held to be an 'adequate and independent state ground' sufficient to bar a petitioner's habeas corpus claim."), *report and recommendation adopted,* No. 10-CV-3451, 2011 WL 1344599 (S.D.N.Y. Apr. 8, 2011).

## II.    The Merits of the Petitioner's Claim

Even if the petitioner had exhausted his claim in state court, his claim nevertheless fails on the merits. He claims that the OAG "had no apparent authority to prosecute" him, because it did not give him the referral letter the Veterans' Affairs sent to the OAG. (ECF No. 12 at 3–4.) The Court construes the petition to claim violations of New York Executive Law § 63(3) and of state criminal discovery laws. But these are state law challenges, not federal law claims. *See Zarro v. Haggett*, No. 11-CV-5362, 2014 WL 978585, at *1 n.2 (S.D.N.Y. Mar. 10, 2014) ("[T]he requirement that the NYAG gain jurisdiction through a referral letter is rooted in state statutory law and does not implicate a constitutional or federal question."); *Beckham v. Miller*, 366 F. Supp. 3d 379, 384 (E.D.N.Y. 2019) (a "question of discovery governed by a New York statute . . . is a matter of state law"); *Wardius v. Oregon*, 412 U.S. 470, 474 (1973) ("[T]he Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded."). However, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v.*

11

*McGuire*, 502 U.S. 62, 68 (1991).  While the petitioner claims a "brazen travesty of justice" in violation of the Fifth, Sixth, and Fourteenth Amendments, and cites his "right to trial by jury under both state and federal law" (ECF No. 12 at 8), he does not explain how the OAG's failure to disclose the referral letter violated his federal constitutional rights.  "[N]ot 'every error of state law can be transmogrified by artful argumentation into a constitutional violation.'" *Ponnapula v. Spitzer*, 297 F.3d 172, 182 (2d Cir. 2002) (citation omitted).  Thus, the petitioner's challenges to New York state law do not raise a cognizable federal habeas claim.  *See Wright*, 2015 WL 4391575, at *2 ("Petitioner's excessive sentence claim is based entirely on state law and does not independently raise a federal issue, thereby precluding federal habeas review.").

Even when the Court liberally construes the petition to raise a violation of due process, the petitioner cannot succeed.  A federal court may not issue a writ of habeas corpus unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." *Cullen*, 563 U.S. at 181 (quoting 28 U.S.C. § 2254(d)).  "Clearly established Federal law in this provision refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions." *Smith v. Wenderlich*, 826 F.3d 641, 649 (2d Cir. 2016) (citation modified).  "When there is no Supreme Court holding on a given issue, it cannot be said that the state court unreasonably applied clearly established Federal law within the meaning of AEDPA." *Id.* (citation modified).  Moreover, a federal court may not "issue a habeas writ based upon a perceived error of state law, unless the error is sufficiently egregious to amount to a denial of due process under the Fourteenth Amendment." *Waldron v. Superintendent, Attica Corr. Facility*, No. 07-CV-154, 2010 WL 597402, at *3 (N.D.N.Y. Feb. 16, 2010).  As the petitioner acknowledges, the Division of Veterans' Affairs sent the referral letter to the OAG in 2017, asking the office to investigate and, if appropriate, prosecute the petitioner.  (ECF No. 12 at 4;

12

SR 1–2.)  Thus, the OAG had authority, pursuant to Executive Law § 63(3), to prosecute the petitioner.  The petitioner does not assert that that the state habeas court's rulings violated any clearly established Supreme Court law, and does not cite any evidence from which the Court could conclude that the OAG's failure to give him the referral letter during discovery was a constitutional error.

## CONCLUSION

For these reasons, the petition is denied in its entirety, and the case is dismissed.  A certificate of appealability will not be issued because the petitioner has not made a substantial showing of a denial of a constitutional right.  *See* 28 U.S.C. § 2553(c).


**SO ORDERED.**

s/Ann M. Donnelly

ANN M. DONNELLY
United States District Judge


Dated: Brooklyn, New York
       April 16, 2026